IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REGIS STEPP,                          )
                                      )
        Plaintiff,                    )    Civil Action No. 06-576
                                      )
        v.                            )
                                      )
FAIRPOINT COMMUNICATIONS,             )
INC., MARIANNA AND SCENERY            )
HILL TELEPHONE COMPANY,               )
TERRY STAUFFER, MICHELLE              )
MURRAY and LORI L. ENGEL,             )
                                      )
        Defendants.                   )

MEMORANDUM and ORDER

Gary L. Lancaster,                              **30**
District Judge.                       November ___, 2007

        This is an action in employment discrimination.
Plaintiff, Regis Stepp, alleges that defendants, Fairpoint
Communications, Inc., Marianna and Scenery Hill Telephone Company,
discriminated against him based upon his age and retaliated against
him in violation of the Age Discrimination in Employment Act of
1967, as amended, 29 U.S.C. § 621, et seq. ("ADEA") and the
Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").
Plaintiff claims the individual defendants aided and abetted in his
employer's discrimination and retaliation in violation of the PHRA.
See 43 P.S. § 955(e). Plaintiff seeks monetary damages and certain
equitable relief.

        Defendants have filed a motion for summary judgment.
[Doc. No. 22]. Defendants contend that plaintiff's claims fail
because he cannot set forth of a prima facie case of age

discrimination or retaliation. Defendants posit, as to both of these claims, that there is no evidence that plaintiff suffered any adverse employment action. Defendants further contend that even if plaintiff could show that he was denied a promotion, his claims still fail because he cannot show that defendants' articulated non-discriminatory reason for not promoting him was a pretext for discrimination. Finally, defendants contend that the PHRA claims against the individual defendants also fail because there is no evidence that the individual defendants "aided and abetted" in the commission of any discriminatory or retaliatory act. For the reasons set forth below, defendants' motion will be granted.

I.   BACKGROUND

Unless otherwise indicated, the facts set forth below are undisputed.

### Plaintiff's Job As Outside Plant Technician

Plaintiff, born in 1951, worked for Defendant Marianna and Scenery Hill Telephone Company ("Marianna") from 1972 until September of 2001 when Defendant Fairpoint Communications, Inc. ("Fairpoint") acquired Marianna. Plaintiff continues to work for Fairmont in the same job he has had since the mid-1970's, Outside Plant Technician ("OPT"). Plaintiff performs construction of aerial and/or underground telephone pole line facilities, sets telephone poles, digs hand ditches, works with fiber optic cable,

2

provides landlines to cell phone towers, installs new telephone services, and troubleshoots customer problems.

Plaintiff has worked with three other OPTs: Brad Hart (born 1970), Bill Berry (born 1943), and Jim Yarkosky (born 1954), for the last 15 or 20 years. All four OPTs have performed the same job, are all hourly paid employees and, until December 2004, all reported to OPT Supervisor David Ross.

### OPT Supervisor Retires

David Ross was the OPT Supervisor, a salaried position. Ross assigned work to the four OPTs, performed performance reviews of the OPTs, visited the OPTs' worksites to make sure they had everything that they needed, and met with contractors. Additionally, Ross coordinated the maintenance of trucks used by the OPTs, developed the layout of new construction and wiring, determined costs, and was the person the OPTs called in the event of a service problem.

Ross's position of OPT Supervisor was eliminated after Fairpoint acquired Marianna. Ross then became the Outside Plant Engineer, which he considered to be a demotion because he was no longer part of management. Ross continued to assume virtually all of the responsibilities he had as OPT Supervisor; additionally, he co-managed with defendant Terry Stauffer and entered data into the computer. Ross continued to earn the same salary as he had as OPT Supervisor. Ross retired in December of 2004.

3

Upon Ross's retirement, Fairpoint promoted Terry Stauffer (born 1951) to Local Manager making him responsible for overall operations. Stauffer assumed the responsibility of supervising the OPTs, the function formerly performed by Ross. Stauffer decided that, due to his increased workload, he needed assistance distributing the morning job assignments to the OPTs. Stauffer first asked David Stolfer (born 1956), the Central Office Technician, to assist in handing out the morning assignments. Stolfer declined Stauffer's request to hand out job assignments to the OPTs and suggested that Stauffer have OPT Brad Hart hand out the assignments. Stauffer did ask Hart to assist in distributing morning assignments, based in part on Stolfer's recommendation. The OPTs worked together to hand out the assignments before Hart was asked to do so.

Hart told the OPTs, including plaintiff, that Stauffer told him (Hart) that he was being asked to hand out assignments because he was younger and would be around longer than the other OPTs. Hart, however, later testified that Stauffer never actually said that to him. Stauffer denies ever having made those remarks to Hart.

Stauffer also asked Hart to make sure things were completed throughout the day. Additionally, Hart met with contractors, entered data into the computer for the OPTs, and sat at Ross's desk.

Stauffer listed Hart as a "supervisor" in Fairpoint's 2005 Disaster Plan. Stauffer prepared the Disaster Plan in response to a Public Utility Commission requirement that all telephone companies have and maintain such a plan in case of a disaster. Stauffer did not create the Disaster Plan, but instead used a similar plan from Maine as a template to create Marianna's Disaster Plan.

The Disaster Plan uses the title "Outside Plan Technician" to refer to Hart at one location, and on another page of the document refers to Hart as a "supervisor." The Disaster Plan listed David Stolfer as a supervisor alongside Hart even though Stolfer was not a supervisor. Stauffer testified that he removed the "supervisor" designation as to Hart as soon as Stauffer heard that Hart was listed as such.

Plaintiff believed that Hart had been promoted based upon the aforementioned changes following Ross's departure. Hart, however, denies that he was promoted or that he enjoyed any increased authority as a result of these added responsibilities. Stauffer also denies that he promoted Hart.

While Hart did receive a larger percentage increase in his pay compared to the other OPTs after Ross left, Fairpoint explained to the OPTs that this increase was due to the fact that employees receiving pay below the midpoint for the pay scale, such as Hart, would receive more aggressive wages than those at or above

5

the midpoint for pay scale, such as plaintiff.

Hart's title remained the same and he continued to earn an hourly wage which was lower than plaintiff's. Hart testified that he didn't really have any increased responsibilities except to make sure that the OPTs' work was done throughout the day. The OPTs continued to collaborate and hand out the assignments together even though Stauffer had asked Hart to hand out assignments.[1]

## Plaintiff Complains of Age Discrimination

Plaintiff first raised allegations of age discrimination when he spoke to defendant Michelle Murray, Fairpoint's Director of Human Resources, on February 15, 2005. Plaintiff complained that Hart had been selected to distribute assignments in the morning. Murray asked plaintiff whether he wanted a raise and whether plaintiff believed Hart was distributing the assignments unfairly. Murray then spoke with Stauffer to get his side of the story. Murray also questioned OPTs Hart and Jim Yarkosky. Murray suspected that a miscommunication, not age discrimination, had occurred. Murray asked Stauffer, in an attempt to resolve the miscommunication, to set up a meeting to speak with plaintiff as soon as possible believing the matter could be easily resolved.

---

[1]

Plaintiff's deposition testimony does not support his contention that Hart handed out assignments on his own. [Doc No. 32 ¶¶ 64, 66, 68]. In fact, Plaintiff specifically testified that the OPTs continued to hand out assignment together, "We kind of did it together forever, even afterwards." [Doc. No. 32-3 at 234].

6

Plaintiff called Murray, on February 22, 2005, expressing frustration that she had not contacted him since he first complained. Murray told plaintiff that she thought Stauffer had contacted him and assured plaintiff that Stauffer would contact him to resolve the matter. Stauffer then sent plaintiff an email to set up a meeting, but plaintiff refused to meet. On February 23, 2005, plaintiff contacted another Fairpoint Human Resources employee, explained his side of the story and insisted that he not be required to have a face-to-face meeting with Stauffer which was scheduled for that afternoon. The meeting with Stauffer was cancelled at plaintiff's request.

Murray summarized her findings and provided them to defendant Lori Engel, Fairpoint's Vice President of Human Resources, on February 23, 2005. Engel then called plaintiff and interviewed him. Engel then interviewed Stauffer, Hart, and Murray independently, reviewed everything and found plaintiff's allegation of age discrimination to be unsubstantiated. Engel called plaintiff to advise him of her findings and conclusions within approximately three weeks of when plaintiff first raised his age discrimination allegations.

## Defendants' Treatment Of Plaintiff After He Complains Of Discrimination

The first performance review that plaintiff received from Stauffer after he complained of age discrimination was his 2004 review which he received in April 2005. Plaintiff's 2004 review

7

was better than his 2003 review. Plaintiff's 2005 review was better than his 2004 review. With regard to his pay, plaintiff received a 1% increase in January 2004, a 1% increase in January 2005, and a 2.5% increase in January 2006. The first bonus plaintiff received after he complained of age discrimination was his 2005 bonus, paid in January 2006, which was slightly higher than his 2004 bonus.

Plaintiff claims that after he complained of age discrimination, he was subjected to belittling remarks and disparaging comments by Stauffer and that Stauffer ignored his suggestions. Additionally, plaintiff claims that Defendants Murray and Engel essentially ignored, discounted, and dismissed his complaints of age discrimination.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

8

247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of the plaintiff's cause of action. Defendants need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

It is on this standard that the court has reviewed the instant motion for summary judgment and the response thereto. Based on the pleadings and evidence of record, and the briefs filed in support and opposition thereto, the court concludes, as a matter of law, that plaintiff has failed establish that he suffered any

9

adverse action as necessary to set forth a prima facie case of age discrimination and/or retaliation. The court also concludes that plaintiff's PHRA claims against the individual defendants fail as a matter of law. Accordingly, the court will grant defendant's motion for summary judgment.

III. DISCUSSION

Plaintiff claims that Fairpoint and Marianna discriminated against him in violation of the ADEA and PHRA when they denied him a promotion because of his age. Plaintiff further alleges that defendants retaliated against him after he complained by subjecting him to poor raises and performance reviews, by ignoring his suggestions, and by otherwise harassing him. Plaintiff claims that the individual defendants aided and abetted Fairpoint and Marianna in committing the aforementioned discriminatory and retaliatory acts in violation of the PHRA. The court will address each of these claims in turn.

A. Age Discrimination Claim

In order to set forth a claim for failure to promote under the ADEA, a plaintiff must show that (1) he is over forty, (2) he applied and is qualified for the position in question, (3) he was denied the position, and (4) the employer ultimately filled the position with someone sufficiently younger to permit a

10

reasonable inference of age discrimination.[2]   Barber v. CSX Distribution Services, 68 F.3d 694, 998 (3d Cir. 1995) (noting that a failure to promote claim under the ADEA is analogous to a failure to hire claim)(citation omitted).   The plaintiff must produce sufficient evidence to convince a reasonable factfinder as to all the elements of a prima facie case of discrimination.   Potence v. Hazleton Area School Dist., 357 F.3d 366, 370 (3d Cir. 2004).

Defendants posit that plaintiff's age discrimination claim fails because he cannot establish that he was denied a position as is necessary to set forth a prima facie case. Plaintiff responds that he was denied the promotion that was awarded to Hart who is 19 years younger than he.   There is not sufficient evidence of record, however, to allow a reasonable factfinder to conclude that Hart was promoted, or that plaintiff was denied any promotion.

There is no dispute that upon Ross's departure, Stauffer was promoted to Local Manager and became responsible not only for his previous duties but also for Ross's duties, including supervising the OPTs.   Consequently, Stauffer's workload increased and he requested assistance from Hart.   Despite the fact that Hart

---

2

As Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts, the court is treating plaintiff's PHRA claims as coextensive with his ADEA claims. See Kelly v. Drexel University,   94 F.3d 102, 105 (3d Cir. 1996).

11

assisted Stauffer, Hart remained an OPT, his core job duties remained the same, he continued to earn an hourly wage, not a salary as Ross did, and he continued to earn less than plaintiff. Additionally, Hart clearly testified that he did not believe that he had been promoted. Stauffer also testified that Hart was not promoted.

Moreover, the facts relied upon by plaintiff do not show that Hart was promoted. Plaintiff first points to Hart's new task of handing out morning assignments as evidence of a promotion. The undisputed facts relating to this new task, however, do not indicate that Hart was promoted. There is no dispute that Stauffer decided that he needed assistance distributing the morning job assignments to the OPTs and that he first asked David Stolfer, who declined. Stauffer then asked Hart, upon Stolfer's recommendation, to assist in this regard. Interestingly, all of the OPTs, including plaintiff, continued to collaborate and hand out assignments together despite the fact that Stauffer asked Hart to hand out assignments.[3]

Plaintiff next points to defendants' 2005 Disaster Plan, wherein Hart was listed as a "supervisor," as evidence of Hart's promotion. There is no evidence, however, that the titles or

---

3

As mentioned in footnote 1 of this Opinion, plaintiff's own deposition testimony confirms that the OPTs continued to hand out assignments together even after Stauffer asked Hart to do so. [Doc. No. 32-3 at 234].

12

designations listed in the Disaster Plan actually impacted the official titles or status of the employees. For instance, the Disaster Plan also listed David Stolfer as a supervisor even though he was not a supervisor. Additionally, Stauffer removed Hart's "supervisor" designation as soon as Stauffer heard that Hart was listed as such.

Next, plaintiff points to the fact Hart began to sit at Ross's desk as evidence that Hart was promoted to supervisor. It is undisputed, however, that Hart simply chose to sit at the desk once it was vacated and that no one instructed him to sit there. Moreover, Ross simply sat at that particular desk habitually; the desk was never assigned to Ross.

Plaintiff alleges that Hart began meeting with contractors, a role formerly handled by Ross. Plaintiff's only evidence in this regard is that Hart met with the contractor that sprayed right-of-ways. Plaintiff, however, admits that (1) Hart was meeting with this particular contractor along with Ross prior to Ross leaving; and (2) plaintiff and other OPTs also met with contractors from time to time.

Finally, plaintiff points to the fact that Hart received a larger pay increase than the other OPTs as evidence of Hart's promotion. While Hart did receive a larger percentage increase in his pay compared to the other OPTs after Ross left, plaintiff admits that Fairpoint explained to the OPTs that this increase was

13

due to the fact that employees receiving pay below the midpoint for the pay scale, such as Hart, would receive more aggressive wages than those at or above the midpoint for the pay scale, such as plaintiff. There is no evidence that Hart's pay increase was tied to any promotion. Furthermore, Hart continued to earn less than plaintiff.

The evidence proffered by plaintiff simply does not indicate that Hart was promoted or that he otherwise experienced any significant change in his employment status. Rather, the following undisputed facts show that Hart was **not** promoted: (1) Hart remained an hourly employee and did not become a salaried employee as Ross was; (2) Hart continued to earn an hourly wage which was less than plaintiff's hourly wage; and (3) Hart remained an OPT and his core job duties remained the same. See McCulley v. S. Connecticut Newspapers, Inc., 98 F. Supp.2d 216, 222-23 (D. Conn. 2000) (holding that the plaintiff failed to establish a failure to promote under Title VII where the employee chosen for the alleged promotion earned less than the plaintiff and the plaintiff's only evidence of promotion was that the employee performed supervisory duties on a temporary basis while the manager was on leave).

Based upon the evidence of record and viewing that evidence in the light most favorable to plaintiff, a reasonable factfinder could not conclude that Hart was promoted or that

plaintiff was denied any promotion. Plaintiff, therefore, cannot establish a prima facie case of age discrimination and defendants' motion as to this claim will be granted.

B.    Retaliation Claim

In order to set forth a retaliation claim under the ADEA, a plaintiff must show that (1) he engaged in protected activity, (2) the employer took action that a reasonable employee would have found to be materially adverse, in that it might well have dissuaded a reasonable employee from making or supporting a charge of discrimination; and(3)there is a causal connection between the protected activity and the employer's action. Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006).

Defendants contend that plaintiff's retaliation claim fails because he cannot establish the second element of his prima facie case, that defendants took any action that a reasonable employee would have found to be materially adverse.   Plaintiff claims he suffered the following material adverse actions: (1) he received poor performance reviews after he complained; (2) he received poor raises after he complained; and (3) Stauffer ignored his suggestions and otherwise belittled him.[4]

---

4

The court notes that in his Opposition to Defendants' Motion for Summary Judgment [Doc. No. 31], plaintiff does not address defendants' argument that his retaliation claim fails as a matter of law.  The court further notes that in his Response to Defendants' Statements of Material Undisputed Facts [Doc. No. 32], plaintiff has proffered no evidence in support of his claim that Stauffer retaliated against him through his

15

## 1. Plaintiff's performance reviews

The first review that plaintiff received after he complained of age discrimination was his 2004 review which he received in April of 2005. Plaintiff presents no evidence of retaliation with respect to his 2004 review. The undisputed evidence shows that plaintiff's 2004 review was better than his 2003 review. Stauffer rated plaintiff higher in his 2005 review than he had in 2004. In fact, plaintiff explicitly admits that his evaluation improved overall after he made the claim. [Doc. No. 32 at ¶121]. Instead of proffering evidence, plaintiff speculates that his 2004 review "could have been even higher" if he had not complained. [Doc. No. 32 at ¶121].

Given plaintiff's admissions and lack of evidence on this point, there is clearly insufficient evidence from which a reasonable jury could find that Stauffer took any action against plaintiff, through his performance reviews, that "might well have dissuaded a reasonable employee from making or supporting a charge of discrimination." See Moore, 461 F.3d at 346.

## 2. Plaintiff's raises

Plaintiff also alleges that his pay was adversely affected by his complaints of age discrimination. As with his performance reviews, however, his pay improved after he complained.

---

performance reviews and/or pay raises. Notwithstanding these procedural and evidentiary deficiencies, we have addressed the retaliation claim on the merits.

Plaintiff received a 1% pay raise in January 2004, a 1% increase in January 2005 and, after he complained of discrimination in February of 2005, plaintiff received a 2.5% pay raise in January 2006. Plaintiff offers no evidence as to how his pay suffered. Rather, plaintiff speculates that he "would have got an even higher pay raise." [Doc. No. 32 at ¶139].

As with his performance reviews, evidence of retaliation with respect to plaintiff's pay is non-existent. Consequently, there is insufficient evidence from which a reasonable jury could find that Stauffer took any action against plaintiff, through plaintiff's pay, that "might well have dissuaded a reasonable employee from making or supporting a charge of discrimination." See Moore, 461 F.3d at 346.

### 3. Stauffer's attitude toward plaintiff

Finally, plaintiff points to Stauffer's attitude toward him as evidence of retaliation. Specifically, plaintiff complains that Stauffer ignored his suggestions and, in doing so, made belittling and disparaging comments toward plaintiff. [Doc. No. 32 at ¶143]. The undisputed evidence, however, shows that of the two suggestions that plaintiff was able to identify, one of them was actually implemented by Stauffer. [Doc. No. 32 at ¶142].

Plaintiff offers the following with regard to Stauffer's alleged belittling and disparaging remarks, "[Stauffer] just ignored my suggestions and made some comments that I didn't like."

17

[Doc. No. 32 at ¶143]. Plaintiff adds that Stauffer would not respond to plaintiff's questions during meetings and no longer questioned plaintiff "about things and instead all questions were directed to Hart." [Doc. No. 32 at ¶143].

"[P]etty slights or minor annoyances that often take place at work" are trivial harms and not materially adverse actions for purposes of establishing a retaliation claim. See Moore, 461 F.3d at 346 (citing Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006)). Stauffer's alleged actions are, indeed, "petty slights or minor annoyances" and do not rise to the level of materially adverse conduct. See Allen v. National R.R. Passenger Corp., 228 Fed. Appx. 144, *148 (3d Cir. 2007) (dismissing plaintiff's retaliation claim for failure to set forth a prima facie case because plaintiff's reassignment of work while absent and one incident of criticism did not rise to the level of material adversity); Nagle v. RMA, The Risk Mgmt. Ass'n., -- F. Supp.2d --, 2007 WL 1437688, *6 (E.D. Pa. May 15, 2007) (holding that plaintiff's "heated," 65 minute meeting with her supervisor and human resources officer, which left plaintiff believing her career was over and suffering from emotional distress, did not constitute a materially adverse action).

Plaintiff has failed to set forth sufficient facts of record from which a jury could reasonably determine that Stauffer took any materially adverse action against plaintiff in retaliation

18

for plaintiff's complaint of age discrimination. Defendants' motion for summary judgment as to plaintiff's retaliation will, therefore, be granted.

C.   PHRA Aiding and Abetting Claims Against Stauffer, Murray and Engel

Plaintiff's remaining claims are PHRA "aiding and abetting" claims against the individual defendants, Terry Stauffer, Michelle Murray, and Lori Engel. Plaintiff alleges that the three individual defendants aided and abetted the discrimination, harassment, and retaliation against him by perpetrating a hostile work environment in violation of section 955(e) of the PHRA. See 43 Pa. Cons. Stat. §955(e).

Section 955(e) of the PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ..." 43 Pa. Con. Stat. § 955(e). Courts have thus held that an individual defendant can be held liable under the PHRA in his personal capacity if the individual is a supervisor and the plaintiff can demonstrate that the supervisor aided or furthered the employer's discriminatory practices. See, e.g., Dici v. Commonwealth of Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996); Marion v. City of Philadelphia, 161 F. Supp. 2d 381, 388 (E.D. Pa. 2001); Cohen v. Temple Physicians, Inc., 11 F. Supp. 2d 733, 737 (E.D. Pa. 1998) ("[i]ndividual

19

employees are not to be held liable ... unless a supervisory employee can be shown to have aided and abetted the employer's discriminatory actions in violation of the PHRA").

Direct incidents of discrimination or harassment by a supervisor, however, are not covered by the terms of Section 955(e). Dici, 91 F.3d at 553 (granting summary judgment in favor of individual defendant on section 955(e) claim where the plaintiff alleged only direct incidents of his harassment against that defendant).

### 1. Terry Stauffer

Defendant Stauffer argues that plaintiff's PHRA claim against him fails because he has alleged only direct acts of discrimination and retaliation by Stauffer, and not acts which would constitute "aiding and abetting" under the PHRA. The court agrees.

The law is clear that direct incidents of discrimination or harassment by a supervisor are not covered by the terms of Section 955(e). See Dici, 91 F.3d at 553. There is no dispute that plaintiff has alleged only direct acts discrimination and retaliation by Stauffer. In fact, plaintiff admits so in his opposition brief, "[a]s set forth above, Stauffer made the decision to disqualify Stepp from the promotion opportunity because of his age." [Doc. No. 31]. Therefore, plaintiff's PHRA claim against Stauffer fails as a matter of law and defendants' motion for

summary judgment as to this claim will be granted.

    2.   <u>Michelle Murray</u>

          Plaintiff bases his PHRA claim against Murray upon her investigation of plaintiff's claim of age discrimination. Plaintiff claims Murray did not take the investigation seriously and did not do a good job of handling his complaint. [Doc. No. 32 at ¶¶ 152, 162]. His opinion is based, in part, on a comment he alleges Murray made when he notified her of the discrimination, "what do you want out of this, a raise?" [Doc. No. 32]. Aside from this alleged comment, plaintiff has offered no evidence to support his claim that Murray aided and abetted Fairpoint's discriminatory practices.

          Additionally, the facts show that Murray played no role in any of the discriminatory or retaliatory actions of which plaintiff complains. There is no dispute that her involvement here is limited to her investigation of plaintiff's complaint of discrimination. As such, there are no facts from which a jury could reasonably conclude that Murray aided, abetted, incited, compelled, or coerced Fairpoint to discriminate or retaliate against plaintiff. <u>See</u> <u>Saidu-Kamara v. Parkway Corp.</u>, 155 F. Supp. 2d 436, 441 (E.D. Pa. 2001) (holding that because the individual defendant played no role in the disciplining of the plaintiff or in the decision to terminate her, plaintiff could not show that the individual defendant aided or abetted the corporate defendants in

21

any discriminatory conduct); <u>Cohen</u>, 11 F. Supp. 2d at 737 (dismissing claims against individual defendants as the complaint was devoid of any allegations that the individual defendants aided, abetted, incited, compelled, or coerced the plaintiff's employer to discriminate against the plaintiff).

Moreover, plaintiff's section 955(e) claim must fail because his discrimination and retaliation claims fail. As this court has found that Fairpoint's conduct was not discriminatory or retaliatory under the ADEA or PHRA, there was no discrimination or retaliation for Murray to aid and abet. <u>See Kaniuka v. Good Shepherd Home</u>, 2006 WL 2380387, *10 (E.D. Pa. Aug. 15, 2006) (holding that "[i]ndividual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet"); <u>see also Taylor v. Rodale, Inc.</u>, 2004 WL 1196145, *4 (E.D. Pa. May 27, 2004) (dismissing the section 955(e) claim against the individual defendant because there was no basis for relief against the employer.)

For the foregoing reasons, Defendants' motion for summary judgment as to plaintiff's PHRA section 955(e) claim against Murray will be granted.

3.    <u>Lori Engel</u>

As with Murray, plaintiff's PHRA section 955(e) claim against Engel is based upon her investigation of plaintiff's complaint of discrimination. Plaintiff claims Engel did not treat

22

his claim seriously. [Doc. No. 31 at 12]. Plaintiff, however, adduces no evidence to support his opinion. Moreover, Engel's role here is limited to her investigation of plaintiff's complaint of discrimination. Consequently, there are no facts from which a jury could reasonably conclude that Engel aided, abetted, incited, compelled, or coerced Fairpoint to discriminate or retaliate against plaintiff. Furthermore, as discussed above, there was no discrimination or retaliation for Engel to aid and abet.

Therefore, plaintiff's claim against Engel fails for the same reasons his claim against Murray fails: (1) plaintiff has failed to adduce any evidence to substantiate his claim that Engel aided and abetted in Fairpoint's alleged discriminatory and retaliatory treatment of plaintiff; and (2) there was no discrimination or retaliation for Engel to aid and abet. See Saidu-Kamara; Cohen; Kaniuka. Defendants' motion for summary judgment as to plaintiff's PHRA section 955(e) claim against Engel will, therefore, be granted.

IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted. An appropriate order follows.

23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REGIS STEPP,                        )
                                    )
        Plaintiff,                  )        Civil Action No. 06-576
                                    )
    v.                              )
                                    )
FAIRPOINT COMMUNICATIONS,           )
INC., MARIANNA AND SCENERY          )
HILL TELEPHONE COMPANY,             )
TERRY STAUFFER, MICHELLE            )
MURRAY and LORI ENGEL,              )
                                    )
        Defendants.                 )

AND NOW, this 30th day of November, 2007, upon consideration of defendants' motion for summary judgment [Doc. No. 22] and supporting briefs [Doc. Nos. 23, 24, 33], and plaintiff's responses thereto [Doc. Nos. 31, 32], IT IS HEREBY ORDERED THAT defendants' motion for summary judgment [Doc. No. 22] is GRANTED. The Clerk of Court is directed to mark this case closed.

BY THE COURT:

, J.

cc:  All Counsel of Record